It's been great having Judge Goldberg here from the United States Court of International Trade in New York City, and Judge, you sit with us from time to time. We greatly appreciate your coming down to the Oven Circuit to help us decide these cases. My pleasure. My pleasure. And we have just two that are on the docket this morning, and the first is Ahmed v. Kifle in the Ethiopian Review. And Mr. Graubart is here for the appellants, and Ms. Gately is going to argue for the appellee. And are you ready to proceed, Mr. Graubart? Good morning, Your Honors. Noah Graubart on behalf of the appellants. May it please the Court. The District Court erred in dismissing Appellant Elias Kifle from this case under the Supreme Court's ruling in the Newman-Green case. Newman-Green recognizes a narrow exception to the rule that the existence of subject matter jurisdiction is otherwise to be determined as of the date of the complaint. It's an exception that the Supreme Court emphasizes to be exercised sparingly in rare cases. It's exercised sparingly because federal courts are courts of limited jurisdiction. Well, it seems to me when we shut this case all the way down, what it's going to turn on is whether or not this fellow, Kifle, was a necessary or indispensable party under Rule 19 of the Federal Rules of Civil Procedure. And when you look at that Newman-Green case that you're talking about, the defendants in that case were found jointly and severally liable, just like the defendants in this case were found jointly and severally liable. And the Supreme Court affirmed the Court of Appeals' dismissal of a non-diverse party, which is exactly what happened in this case. And then they noted that given that all of the defendants are jointly and severally liable, it cannot be argued that one defendant was indispensable to the suit. So if we apply that principle of law to this case, I think you lose. How can you win? So, Judge, with due respect, I think that reads more into the holding of Newman-Green than it bears. And I'll tell you exactly why. This Court, in Laker Airways v. British Airways, which is a case that Mr. Ahmed relies on, said, I'll quote for you, a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation. So it is not dispositive that Mr. Kifle is an alleged joint and several-tortfeasor. Certainly, there are cases saying that a joint and severally liable party is not necessarily required, is not necessarily indispensable. But that's not the end of the inquiry. It's a very fact-specific one and one that this Court so, for example, in Laker Airways, the Court found that, in fact, although the defendant, the absent party would have been jointly and severally liable, they were still indispensable, and this Court dismissed the relevant cause of action. So I believe that that's too strong of a reading of Newman Green, Judge, to find that joint and several liability is dispositive. I'll slightly point out also that in the Newman Green, Your Honor's question, presumed that under Newman Green, if the Court finds that Mr. Kifle is dispensable, that that's the end of the inquiry. I think the Court will find that Newman Green frames it slightly differently and says even if it is dispensable, even if the party is dispensable, the Court still needs to then determine whether tactical advantages would be created in the favor of the remaining parties by the presence of that dispensable party, and that's an exceedingly rare circumstance that it would still exercise the right to dismiss the party. So it's really two different standards under which the Court can conclude that it was error to dismiss Mr. Kifle. Your Honor's question, if Kifle was properly dismissed, can complete relief be afforded in this case? Absolutely not, and for two reasons. Number one, because Mr. Ahmed, in framing his case, sought, litigated, and received equitable relief, injunctive relief directed specifically at Mr. Kifle personally. In the January 15, January 2015 default judgment, the District Court ordered Mr. Kifle personally to retract the article in question and precluded him from publishing or writing anything on any website about Mr. Ahmed at all. That's gone. That relief is completely unavailable now that Mr. Ahmed is not a party. The reinstated October 2016 default judgment says nothing about injunctive relief. It only applies monetary relief to Ethiopian Review, Inc. This Court's decision and focus on the family is dispositive on that. This Court said that where there is an absent party, there was the transit authority's contractor who actually had the power to put up the advertisements on the bus stops, and that was what was sought by the plaintiff, was they wanted these bus stop ads run. The contractor was absent, and they said the transit authority doesn't have the power to run the ads, so the plaintiff cannot obtain the relief it sought without the contractor. It's an indispensable party, and we're going to dismiss. Of course, all of this could have been avoided if the defendants in this case had just gone out and hired counsel and found an answer to the complaint. Well, Judge, Ethiopian Review is the defendant that we'd be talking about there because Mr. Kifle would otherwise be absent. It would have been avoided, but the Supreme Court has said that a party has an absolute right to ignore a case that is filed with a lack of jurisdiction and to collaterally attack it later, which is exactly what happened here. And, by the way, Your Honor, the defendant that did appear, Mr. Kifle, to the point of it all could have been avoided, I'll tell you how it could have been avoided, is if any of the lawyers in the room... We can infer that Ahmed added Keifel to the suit knowing all along that he would dismiss Keifel later  What I can tell you, Your Honor, I can't read into the mind of Mr. Ahmed. The objective evidence says that in Mr. Keifel's very first pleading, he raised subject matter jurisdiction as a defense and not only did Mr. Ahmed not recognize the error, he instead recharacterized it as a form of nonconvenience argument in his responsive brief, effectively sweeping it under the rug so that none of the lawyers in the room, one of the largest and most sophisticated law firms in the world representing Mr. Ahmed, did not recognize what the nonlawyer pointed out immediately was that there was no subject matter jurisdiction. And Newman Green's exception, the cases in which it's applied are ones in which we have no one having raised it until, for example, on appeal. And there had already been a full trial on the merits. That's the exact opposite of the case we have here. Well, you know, when I look at Rule 21 and Rule 19, that's a lot of discretion in the district judge in determining whether or not a party is indispensable, whether the opposing party is going to be prejudiced, whether the opposing party has a tactical advantage. And there seems to be some disagreement about what our standard of review is, which, I mean, just speaking for myself,  Do we have a de novo standard of review or an abusive discretion standard of review? Are we reviewing subject matter jurisdiction as an issue of law? And so if that's our standard of review, it would be de novo. But we ordinarily review a dismissal for failure to join an indispensable party under Rule 19 for an abusive discretion. So I'm a little confused as to what our standard of review ought to be. I'm a little confused from the court's case law as well, Your Honor, but I will tell you two things for certain. Number one, in Payroll Management v. Lexington Insurance just in 2016, this court considered a very, very similar fact pattern. The only difference was that the absent party that was to be dismissed as indispensable was the plaintiff. The court applied expressly a de novo standard of review based on the question of subject matter jurisdiction. That's number one. Number two, in Ingram v. CSX, the court likewise applied a de novo standard of review to the same question. I say I'm a little confused because there is at least one case and the name of it is escaping me here, but it was cited in the Appellee's brief that does mention an abusive discretion standard. I think the distinction is here where you have, when we're in the Newman green world, we're not just considering Rule 19. We're considering applying a narrow exception to a subject matter jurisdiction question. Now we're talking about a pure issue of law. The one case, the name of which is escaping me from Mr. Ahmed's brief, there the posture in which the issue had been raised was one where, in fact, the defendant or, excuse me, whichever party was trying to get rid of the absent party did not raise it until after judgment had been entered in a motion for reconsideration or a motion for clarification. And under that posture, I could see this court saying, well, that's kind of a classic discretionary situation. Well, how do you respond to three cases we have out there that, to me, say in clear and unambiguous language that both Rule 21 and Rule 19 determinations are reviewed for an abusive discretion? That's Laker Airways, 11th Circuit, 1999, Mann, 11th Circuit, 1989, and Fritz, 11th Circuit, 1985. All three of those cases say that. And none of those cases has been overruled on bond or by the Supreme Court of the United States. So they're binding on us. What do you say about those cases? What I would say is that equally binding on the court is payroll management versus Lexington and Ingram versus CSX. And I would also say that under abusive discretion standard, we still believe we prevail. That the district court erred in applying the discretionary standard of Rule 19 for all the reasons I've articulated. Laker Airways is a good example, Judge. Laker Airways, if that applied an abusive discretion standard, the court found the party indispensable and dismissed the cause of action because of the injunctive relief issue. So we absolutely can still prevail and should prevail, we believe, under an abusive discretion standard just like in Laker Airways. Okay. So your position really doesn't make any difference what standard of review we apply here? It obviously makes a difference in the grand scheme, but for this particular case and the outcome, yes, sir. Our position, Your Honor, is that we prevail under both standards. Another point that I'll raise that sets us apart from the classic Newman-Green case and also weighs in our favor under the Rule 19 framework, separate and apart from the injunctive relief issue, is that the obvious inference that the court can draw from the record that the only reason we're still standing here is because Mr. Ahmed intends to try and enforce this judgment against Mr. Kiefle personally. He attempts to have it both ways by saying in his red brief that Mr. Kiefle is quote-unquote meaningless. Well, that's fine. If he wants to have it that Mr. Kiefle is meaningless, then there would be no effort, then he cannot go and try and enforce the judgment against Mr. Kiefle. But the record unmistakably reveals the opposite intent. So if everything remains the same, who pays the damages? If everything remains the same, we have a dissolved entity that holds that the judgment is against. We will have no assets to be able to satisfy the judgment. Given the opportunity to explain that he will not be trying to seek to enforce it against Mr. Kiefle personally, Mr. Ahmed refuses. The only reasonable inference this court can draw from that set of facts is that of course the reason we're still here fighting is that Mr. Ahmed seeks to enforce it personally against Mr. Kiefle through some sort of alter ego theory. All right. Thank you, Your Honor. We'll hear from Ms. Gately. Good morning, Your Honors. Mary Gately for Jamal Ahmad along with Paul Schmidt and Anthony Layman. Your Honor, I want to start. This is the correct standard of review. I was going to handle that first. The proper standard of review is just as you stated. It's an abuse of discretion standard. The Winn-Dixie v. Dolan Corp case articulated a standard of review that was abuse of discretion. I have another Eleventh Circuit case from 2015. We did not cite these in our papers, but I did bring copies for the court today. It's the Lions v. O'Quinn case which is 607 Appendix 931. It's a 2015 Eleventh Circuit case also applying abuse of discretion. The issue under review is whether it was appropriate for the district court to strike the non-diverse party, Mr. Kiefle, and to maintain the judgment against the Ethiopian Review, Inc. That's clearly an abuse of discretion standard under the existing Eleventh Circuit precedent. The issue under review is not whether or not Mr. Kiefle is diverse or not. We concede he is not diverse. And so that's, you know, if it were that... Why doesn't the Supreme Court's decision in Newman v. Green answer that question for us? It answers the question that since Mr. Kiefle and the Ethiopian Review, Inc. were both joint and severally liable, you must strike the non-diverse party because you can satisfy your full cause of action against the diverse party, which is in this case the Ethiopian Review, Inc. What is the basis of the two being interchangeable? That's one of the issues in the case, whether or not the blog was separate from the corporation. Yet, as I recall, the blog had actually advertised for funds to be donated to the corporation. Your Honor, the district judge made a finding, a factual finding, that the Ethiopian Review, Inc. was the vehicle by which the website was funded and operated, and he relied on several different sources of information for that. One of the sources was that Mr. Kiefle had made inconsistent statements related to what the purpose of the Ethiopian Review, Inc. was. On the one hand, he had said it was not a 501c3 charitable organization. On the other hand, he had suggested it was for families of imprisoned Ethiopian journalists. Then the court relied upon a document that's in the record. It's Appendix Volume 3, Tab 147. I have it right here. This was an admission right on the website that said that the Ethiopian Review, it invited readers to sponsor it for the purpose of providing funding for information units inside Ethiopia for maximizing the website's technical capacity to make it faster and fight off hacking and to defend them against, I'm paraphrasing, lawsuits against the Ethiopian Review. At the bottom, it noted that people should send their contributions to the Ethiopian Review, Inc. The court said that this was an admission by Mr. Kiefle and by the Ethiopian Review that indeed it was involved in the operation and funding of the website. Further, when ordered to put the retraction up on the defendant Ethiopian Review, Inc.'s website, Mr. Kiefle never told the court, oh, sorry, that doesn't control the website. Went ahead and complied and put it up on the website. Further, Mr. Kiefle never did explain the source of funds and where they went with respect to the Ethiopian Review, Inc. Finally, the court relied upon the well-pled facts in the complaint which were taken as true under the default judgment against both Ethiopian Review and against Mr. Kiefle. If you look at Paragraph 7 of the complaint, Document 1 in Appendix 1, Volume 1, you'll see there that there is a factual allegation that the Ethiopian Review, Inc. was the same thing as the Ethiopian Review website. Turning to the criteria for Rule 19, because that is the criteria that has to be looked at, under Rule 19a, it asks whether or not in that person's absence the court can afford complete relief among the existing parties. As the District Court properly found, Mr. Kiefle is not a required party under 19a. He is jointly and severally liable with the Ethiopian Review, Inc. Full relief can be given. Damages can be given against the Ethiopian Review, Inc.  And the injunctive relief that was asked for is now moved. The court ordered that a retraction be put up on the Ethiopian Review, Inc. website for three weeks, and that was done. With respect to the second additional criteria under Rule 19a, it asks the court does a person claim an interest relating to the subject of the action, and is it so situated that disposing of the action in that person's absence may, as a practical matter, impair or impede the person's ability to protect the interest? The answer to that is no. Mr. Kiefle is now dismissed from the case, so he doesn't have any ongoing interest. And under joint and several liability principles, the Ethiopian Review, Inc. is liable for the defamatory statements themselves. It further asks whether it leaves an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of an interest. The existing parties left in the case are Mr. Ahmad and the Ethiopian Review, Inc., and there are no inconsistent obligations with respect to them. I would direct the court also to the United States Supreme Court case Temple v. Synthesis, which was a joint and several liability case in which a patient was harmed by a medical device put in the back of the patient and chose only to sue the medical device company. The medical device company made a motion to say, well, you're missing indispensable parties. You're missing the doctor who put it in your back, and you're missing the hospital where it was done. And the court in that case said, no, there's joint and several liability. And the court in the Temple v. Synthesis case said, it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. Further, in the Lyon v. O'Quinn case, which I cited for the abuse of discretion standard, in that case, again, the district court failed to dismiss a non-diverse party. And under an abuse of discretion standard, the 11th Circuit found it was improper not to have dismissed the non-diverse party in a tort case involving a fatal car accident where the plaintiff had sued the estate of the driver as well as the employer of the driver. In that case, the 11th Circuit said there is a binding, this is a quote, binding, bright-line rule which militates against taking a pragmatic approach in a case like this one. And the rule is that where joint tortfeasors may be jointly and severally liable, neither tortfeasor is an indispensable party. The inquiry really ends with 19A. This Court does not have to go on to apply that criteria in 19B. I ask you this. Assume with me that Ethiopian Review has no assets. Kefil has been dismissed from the case. And assuming we let this judgment stand, could you collect this judgment from Kefil? Your Honor, that is a remedy question and it's a premature question. It's an important remedy question. There's never been an ounce of discovery given in this case. So all we have, we have nothing in the Ethiopian Review Inc. has any assets or not. All we have are representations by counsel related to that. There's never been an ounce of discovery in this case. The remedy that's been awarded to Mr. Ahmad is a verdict against a monetary judgment against the Ethiopian Review Inc. And he has the right to go try to execute that judgment against the Ethiopian Review Inc. But not against Kefil? Your Honor, I am not prepared to make a concession on that today because I think it is premature to do that. We haven't had any discovery. But he's not a party anymore. I understand that. And it may be that that's where we'll end up at the end of the day on that. But with respect to the Ethiopian Review Inc., it was intentionally dissolved by Mr. Kefil at some point in time after the lawsuit was filed. And there's no evidence about whether or not it has assets or not. There's been no discovery on that point. So if in aid of execution, they want to get discovery and find out if it in fact has assets or not, I think they're entitled, I think Mr. Ahmad is entitled to go after the Ethiopian Review Inc. and find out whatever assets it has and try to collect its judgment that way. There should be no premature pinning down of any options that are given to Mr. Ahmad. He was deeply injured by the defamatory statements in this case. The defamation in this case was accusing him of a heinous crime of human trafficking. The article published on the Ethiopian Review website said that Mr. Ahmad was in charge of massive human trafficking, that's a quote, of underage teenage girls from Ethiopia and putting them in slave-like conditions in Saudi Arabia. He is a global businessman. He came to trial. He testified at a day-long damages trial about the harm to his reputation from that as a global businessman. And a huge number of sharings of this article out to Google when you Google this man's name. I understand that when he first asked Kieffel to retract, Kieffel said, dared him to sue him. Is that right? That's right, Your Honor. He said, come sue me. And the contemptuous conduct, the failure to adhere to the court's rules of civil procedure, the court's own orders in this case has been rampant. The magistrate judge in his findings. I think this district judge was a lot more tolerant of the parties in this case than I would have been. He put up with an awful lot. And I also think he very fairly tried to give everybody a chance to do the right thing. He did, Your Honor. That's my review of the record. Judge Jones was an excellent judge and he did his level best to be fair to the parties. All along the way, as a pro se party, the appellants were given numerous opportunities to comply. The magistrate judge Schofield even drafted his own protective order to allow whatever information needed to be provided in discovery to be done in a confidential manner. And still, there was a refusal to do that. And it led, over a course of more than two years, to the entry of a default judgment against Mr. Kiffley. And later on, in 2015, in January, after a trial on damages, and after a hearing on whether or not the Ethiopian Review should be held in contempt, but judgment entered for default judgment, the Court entered it at that time. This looks like a case that should be settled. We're going to decide the case. Have you had settlement negotiations? Your Honor, from time to time, we've talked about it, but it's never led anywhere, even with counsel involved. I would agree, because sometimes these kinds of cases take up more time than what they should. It's clearly from my perspective. This case is almost as old as I am. Let me just spend a couple minutes on Rule 19b. I don't think you need to get to Rule 19b, but the district judge, in an abundance of caution, went ahead and covered the requirements of 19b, and so I'd like to do that as well. There's no prejudice. Factor 1 asks whether or not a person's absence might prejudice that person or the existing parties. There's no prejudice. Mr. Keifel has been dismissed, and the Ethiopian review is only liable for its own joint and several liability. The second factor, the extent to which any prejudice could be lessened or avoided, the judge has issued indicative rulings to indicate that he'll limit the liability to the joint and several liability of the Ethiopian review for the defamatory statements and not for the misconduct of Mr. Keifel Mr. Keifel, excuse me. The third factor, whether a judgment rendered in the person's absence would be adequate. I already covered that in the context of Rule 19a. Whether the plaintiff would have an adequate remedy if there was the case were dismissed for non-joinder. There would be no longer any remedy for Mr. Ahmad. In terms of the prejudice and the tactical advantage, there was never, as I said earlier, an ounce of discovery given in this case, and no tactical advantage was obtained by having Mr. Keifel in the case. In fact, maybe it was a disadvantage, frankly, at the end of the day. And as Judge Jones found in his opinion, the pragmatic considerations actually favor the appellee, Mr. Ahmad, as well. Those pragmatic considerations are this consideration of finality, judicial efficiency, and economy. And he quoted the Caterpillar case, another U.S. Supreme Court, and said that was overwhelming in this case. It took three years to get to that judgment. In the last minute I have, I'd like to also address the standing issue. There was a question that the Eleventh Circuit raised itself related to standing, and I would just add at the end, I think under the rules, Mr. Kifley has no standing to appeal in this case. If he had any interest that remained that he wanted to assert on an appeal since he was a dismissed party, he should have done it through a motion to intervene in the appeal. Standing in a case at the original stage of a filing of a case is different than standing on appeal. And once he was stricken from the case as a party, and as I've demonstrated through my articulation of the standards in Rule 19a and b, he has no remaining interest in the case. And therefore, if he had any interest that he wanted to raise on appeal, he should have raised it through the form of a motion to intervene. In conclusion, Judge Jones, the district court judge, did an excellent job. He applied all the criteria in the rule. He did not abuse his discretion in making the factual findings he did. Those are reviewed, by the way, under a clearly erroneous standard. They're not clearly erroneous. They're substantiated by the record. And I'd ask that this Court affirm the judge's order in this case. Thank you, Your Honors. Thank you, counsel. Mr. Grohbart, you've reserved some time for rebuttal. Thank you, Judge Wilson. What about that last point, Mr. Kiffel? As a dismissed party, how does he have standing as a dismissed party to contest a jurisdictional factual allegation such as citizenship? It's his very dismissal that he appeals. And, of course, therefore would have standing just like a plaintiff would have standing to appeal his claim being dismissed. It's the very question at the heart of the case, which is whether he, in fact, should have been dismissed. And he's the one that has standing to appeal that. And Wright and Miller called the argument to the contrary spurious. There's no case on all fours here that would say that he doesn't have standing. Payroll management, the case that the Court cited in its own jurisdictional question, considered the appeal of all the parties, including the dismissed party. But, finally, I don't think the resolution to that question much matters because there's no arguments here that Ethiopian review isn't also advancing. So we would reach the same result regardless. Judge Dabena, just to address once more your concern about Newman-Green and joint and several liability, I think the Court will find that the cases relying on Newman-Green explain that Newman-Green did not make a bright-line rule. It was merely saying that you're not necessarily indispensable if you're a joint and several tortfeasor. Otherwise, this Court's holding in Laker Airways could not stand. And the quintessential joint and several tortfeasors who are dispensable are ones that don't have issues regarding injunctive relief, like this case, like the focus on the family in Laker Airways cases, and don't have issues of obvious alter ego remedy questions down the road. So we're not in the same world as the Newman-Green joint guarantors of a note kind of case. With respect to the tactical advantage that Newman-Green instructs the Court to consider, it's a counterfactual inquiry. What would have happened if Mr. Keeflay had never been a party to this case? Is Mr. Ahmed better off because Mr. Keeflay was a party? And he's just admitted two ways that, in fact, he believes he's better off. Number one is, in order to try and dodge the injunctive relief issue, he says, well, it's moot because I already got it. I'm better off because Mr. Keeflay was a party. He can't have it both ways. He either is a necessary party because he still needs the injunctive relief, or he got a tactical advantage because he already got the injunctive relief. And you heard Ms. Gately spend time talking about the contumacious conduct by Mr. Keeflay below. Mr. Keeflay would never have been a party. That's a tactical advantage they're relying on. They spent two pages in their brief complaining about the resources spent and the time spent because they added him as a party wrongly and wouldn't listen when he said there was no subject matter jurisdiction. Another tactical advantage. To Judge Goldberg's question about the factual dispute in the record, I want to emphasize that that's an independent grounds for reversal. Even if that's affirmed, we still believe we win. The webpage itself is not sufficient to demonstrate that Ethiopian Review, Inc. and the website are one and the same. At most, it says that in one instance it offered to raise money for the website. That couldn't support a judgment for defamation. It would therefore make Mr. Keeflay necessary and indispensable to the case because there'd be nobody else to support the judgment. Thank you, Counsel. Thank you, Your Honor.